## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## SPARTANBURG DIVISION

| | |
|---|---|
| ANTHONY OGLESBY, TERESA OGLESBY, SONJA McCALEB, and BRIAN WALTER Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 7 :22-cv-1247-TMC |
| Plaintiffs, | CLASS ACTION |
| v. | |
| LAKEVIEW LOAN SERVICING, LLC | |
| Defendant. | |

### FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Anthony Oglesby, Teresa Oglesby, Sonja McCaleb, and Brian Walter, individually and on behalf of all other similarly situated, by and through their attorneys, bring this First Amended Class Action Complaint and allege as follows:

### INTRODUCTION

1.      Plaintiffs bring this Class Action Complaint against Defendant Lakeview Loan Servicing, LLC ("Defendant" or "Lakeview") to seek recovery on behalf of themselves and others similarly situated in South Carolina, Arkansas, and Illinois ("Class Members"), based upon Lakeview's failure to properly secure and safeguard its customers' sensitive personally identifiable information ("PII").

2.      Specifically, Lakeview failed to properly protect Plaintiffs' and Class Members' names, addresses, loan numbers and Social Security Numbers, and other information provided in connection with a loan application, loan modification, or other items regarding loan servicing. This

1

information is considered PII because it can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information. 2 CFR § 200.79.

3.    Lakeview is one of the largest mortgage servicing companies in the United States, servicing mortgages for over 1.4 million customers including in South Carolina, Arkansas, and Illinois. This includes managing escrow, processing payments, and providing attendant customer services.

4.    In connection with this business, Lakeview retains contact and other personal information, including PII, about individuals with mortgages serviced by Lakeview. By obtaining, collecting, using, and deriving a benefit from the PII of Plaintiffs and Class Members, Lakeview assumed legal and equitable duties to those individuals and represented that it would protect their PII.

5.    Despite representations made through its privacy policies to use "the latest technology to insure [customers'] personal information is secure,"[1] Lakeview discovered that an unauthorized actor gained access to its file servers in December 2021. Lakeview later determined that an unauthorized party gained access to Lakeview's server from October 27, 2021 to December 7, 2021, and that the data on this server included Plaintiffs' and Class Member's PII (the "Data Breach").

6.    Despite learning of the data breach in December, Lakeview did not notify Plaintiffs and Class Members until mid-March 2022 ("Notice of Data Breach Letter"). As required by state laws across the country, Lakeview sent templates of Notice of Data Breach Letter to state attorneys general. Specifically, Lakeview sent a template of Notice of Data Breach Letter to the Maine Attorney General and identified that approximately 2,537,261 individuals like Plaintiffs had their

---

[1] https://lakeview.com/privacy-notice/ (Last visited May 31, 2022).

PII accessed, exfiltrated, and/or compromised on the Data Breach.[2] Lakeview also reported the Data Breach to the California Attorney General's Office,[3] as well as the Texas Attorney General's Office. The Texas Attorney General's Office notes the Data Breach was published to its website on March 21, 2022 and affected 255,762 Texans.[4]

7.     The Data Breach likewise affected residents in South Carolina, Arkansas, and Illinois, including Plaintiffs.

8.     The Data Breach occurred because Lakeview did not implement adequate and reasonable cyber-security procedures and protocols to protect the PII of Plaintiffs and Class Members. Because Lakeview's data security protocols and practices were deficient, unauthorized person(s) were able to access, view, and/or exfiltrate PII belonging to Plaintiffs and the Class Members. Lakeview's negligence, carelessness, and its intentional acts and omissions resulted in the failure to protect the PII and led directly to the Data Breach. Lakeview also failed to warn Plaintiffs and Class Members of the inadequacy of its information security practices and to avoid sharing PII of Plaintiffs and the Class members.

9.     Lakeview's conduct has caused millions of Class Members concrete injury and puts them at a substantially increased risk of identity fraud, which will negatively impact them for years. The exposed PII of Plaintiffs and Class Members was, upon information and belief, already listed

---

[2] https://apps.web.maine.gov/online/aeviewer/ME/40/3d0c184e-e78c-4123-8ce8-8535f71facd3.shtml (Last visited May 31, 2022).

[3] https://oag.ca.gov/ecrime/databreach/reports/sb24-551822 (Last visited May 31, 2022). The information exposed in the Data Breach was unencrypted. California law requires companies to notify California residents "whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person" due to a "breach of the security system[.] Cal. Civ. Code § 1798.82(a)(1) (emphasis added). Lakeview notified the California Attorney General of the Data Breach on March 18, 2022.

[4] https://oagtx.force.com/datasecuritybreachreport/apex/DataSecurityReportsPage (Last visited May 31, 2022).

for sale on the dark web. Plaintiffs and Class Members face an present and immediate lifetime risk of identity theft. This risk is particularly high because the compromised data includes birthdates and Social Security numbers. Plaintiffs and Class Members suffer numerous actual and imminent injuries as a direct result of the Data Breach, including:

    a.   lost or diminished value of their PII;

    b.   out-of-pocket expenses to prevent, detect, and recover from identity theft and/or unauthorized use of their PII; lost opportunity costs, including but not limited to lost time, in attempting to mitigate the consequences of the Data Breach;

    c.   the present and immediate risk to their still-unencrypted PII that may remain in Lakeview's possession and which may be accessed by unauthorized persons as a result of Lakeview's continuing failure to take appropriate and adequate measures to protect the PII.

    d.   the actual or imminent injury arising from actual and/or potential fraud and identity theft through those with unauthorized access to the PII including hackers, and/or criminals; and

    e.   damages in the form of the difference in value between the services that should have been delivered and the actual services delivered.

10.     Lakeview intentionally, willfully, recklessly, or negligently disregarded the rights of Plaintiffs and the Class Members by failing to take and implement adequate and reasonable steps to prevent unauthorized disclosure of data, including PII, and failing to follow applicable protocols, policies, and procedures regarding encryption of data. Because of these failures, Plaintiffs' and Class Members' PII was compromised in that it was disclosed to an unknown and unauthorized criminal third party. Accordingly, Plaintiffs, on behalf of  themselves and Class

4

Members, assert claims for negligence. Plaintiffs and Class Members seek injunctive relief, monetary damages, and all other relief as authorized in equity or by law.

**PARTIES**

11.     Plaintiffs Teresa Oglesby and Anthony Oglesby are citizens of South Carolina. Anthony Oglesby received a letter from Lakeview, dated March 18, 2022, notifying him of the Data Breach and that his PII was included in Data Breach. Plaintiff Teresa Oglesby received a letter from Lakeview on April 5, 2022, dated March 21, 2022, notifying her of the Data Breach and that her PII was included in Data Breach.

12.     Plaintiff Sonja McCaleb is a citizen of Arkansas. Sonja McCaleb received a letter from Lakeview, dated April 4, 2022 notifying her that her PII was included in the Data Breach.

13.     Plaintiff Brian Walter is a citizen of Illinois. Brian Walter received a letter from Lakeview notifying him that his PII was included in the Data Breach.

14.     Defendant Lakeview Loan Servicing, LLC is a Delaware entity with a principal place of business in Coral Gables, Florida. Plaintiffs' claims are asserted against Lakeview and any of its owners, predecessors, successors, subsidiaries, agents, and/or assigns.

**JURISDICTION AND VENUE**

15.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2) because this is a class action wherein the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Lakeview. Plaintiffs are citizens of South Carolina, Arkansas, and Illinois, respectively. Lakeview is a citizen of Florida and Delaware.

16. This Court has personal jurisdiction over Lakeview because (a) Plaintiffs Anthony Oglesby and Teresa Oglesby are citizens and residents of Spartanburg County, South Carolina, and sustained injuries and damages as a result of the Data Breach occurred within the State of South Carolina, Spartanburg County; (b) Lakeview does business in South Carolina, has committed a wrongful act in whole or in part in South Carolina; (c) Lakeview maintains continuing minimum contacts within the State of South Carolina; (d) Lakeview has materially affected the Plaintiffs Anthony Oglesby and Teresa Oglesby and the Class Members in South Carolina; and (e) Lakeview by and through its contract with Plaintiffs Anthony Oglesby and Teresa Oglesby and Class Members have taken a collateral and a security interest in South Carolina, Spartanburg County.

17. Further, as a result of Lakeview's marketing, distribution, promotion, contracts, and sales within Spartanburg County and throughout the state of South Carolina, directly or through their subsidiaries, affiliates or agents, Lakeview obtained the benefits of the laws of South Carolina and the South Carolina market for mortgages and lending. As such, Lakeview has purposefully availed itself, and is subject to this Court's jurisdiction via the South Carolina Long Arm Statute.

18. Venue is proper in this district as a substantial part of the events giving rise to the claims emanated from activities within this District, and Lakeview conducts substantial business in this District. On information and belief, the PII of Plaintiffs Anthony Oglesby and Teresa Oglesby and Class Members was transmitted to and by Lakeview within this District, and Plaintiffs Anthony Oglesby and Teresa Oglesby and Class Members were harmed by Lakeview in this District. Further, as noted above, because property of Plaintiffs Anthony Oglesby and Teresa Oglesby exists in this District, so does Lakeview's collateral and security interest, and as a direct result, Plaintiffs have been substantially harmed in this District.

19.     There is a strong, countervailing federal interest in this Court hearing the claims of all the Plaintiffs. As detailed herein, Lakeview's uniform negligent conduct has harmed customers throughout the country. There are a number of cases pending in other jurisdictions challenging Lakeview's conduct. The maintenance of this lawsuit would aid—not discourage—economic activity and investment in this state, in that Lakeview's conduct impacts the ability of consumers to utilize their PII in economic transactions and gives rise to potential fraud. Further, the causes of action below arose, at least in part, in South Carolina and the conduct involved is of a nature that is not divisible. Preventing the non-resident Plaintiffs and classes from sustaining this action would discriminate against them, frustrating the purpose of the Court's diversity jurisdiction to avoid discrimination of non-residents. Further, federal courts, like this Court, have an interest in enforcing the laws of sister states to which disallowing the Plaintiffs and classes from maintaining this case does violence.  Upon information and belief, no other case filed in any other jurisdiction has a South Carolina, Arkansas, or Illinois Plaintiff on file as a class representative.

## FACTUAL ALLEGATIONS

*Lakeview Collects and Maintains the PII of Plaintiffs and Class Members.*

20.     Lakeview is one of the largest mortgage servicers in the United States and processes customer information in connection with managing accounts, processing payments, and providing customer services.

21.     Plaintiffs and class members have a relationship with Lakeview whereby Lakeview provides mortgage servicing on their loans. During this process, Lakeview acquired Plaintiffs' and Class Members' sensitive PII.

22.     Lakeview, in its privacy policy, promises to protect the PII of Plaintiffs and Class Members. Plaintiffs and Class Members relied on Lakeview, a sophisticated entity, to keep their

PII secure and confidential, to use the PII only for business purposes, and to only disclose the information as authorized.

23.     By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and the Class Members' PII, Lakeview assumed legal and equitable duties to those individuals and knew or should have known that it was responsible for protecting Plaintiffs' and Class Members' PII from disclosure. Lakeview thus had, and has, a duty to adopt reasonable measures to protect the PII of Plaintiffs and Class members from unauthorized and involuntary disclosure to third parties.

24.     Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their PII and relied on Lakeview to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

***The Data Breach***

25.     Lakeview's Notice of Data Breach stated that an unauthorized person accessed its computer systems and file storage servers from October 27, 2021 to December 7, 2021.

26.     In response, Lakeview retained an investigation team to identify the content accessed. On January 31, 2022, Lakeview disclosed that these files contained, at the very least, Plaintiffs' and Class Member's names, addresses, loan numbers, and social security numbers. There were approximately 2,537,261 individuals impacted.

27.     The Notices sent to Plaintiffs stated that "the review process generated a preliminary list of individuals, including you, whose name, address, loan number and Social Security number were included in the files" that were accessed by the unauthorized actor during the Data Breach. Additionally, "[f]or some, the accessed files may also have included information

provided in connection with a loan application, loan modification, or other items regarding loan servicing."

28.    Lakeview also represented that "steps are being taken to further enhance [its] existing security measures." Lakeview did not disclose the contours of those steps, nor information about the cause of the breach, nor the vulnerabilities that had been exploited. Plaintiffs and Class Members have an interest in ensuring the protection of their information that Lakeview still retains.

29.    Lakeview, conceding the concrete and immediate risk of identity theft based on the PII obtained by the unauthorized third parties, advised Plaintiff and Class Members to obtain credit monitoring services with its vendor, Kroll, for a one year. "This is wholly inadequate because data breach victims and other unauthorized disclosures commonly face multiple years of ongoing identity theft. Indeed, Lakeview informed Class Members to "be vigilant for incidents of fraud or identity theft … over the next 12 to 24 months."

30.    Lakeview itself suggested a number of burdensome and time-consuming steps for Plaintiffs and Class Members to take including fraud alerts, credit freezes, and/or contacting government authorities.

31.    Plaintiffs' and Class Members' unencrypted PII has already, or may in the immediate future, come to be for sale on illicit dark web outlets, or could be received by companies who will use the PII for targeted marketing not authorized by Plaintiffs and Class Members.[5]

32.    Lakeview failed to use reasonable security procedures and practices in safeguarding Plaintiffs' and Class Members' sensitive, unencrypted PII.

---

[5] The fact that unencrypted data was exposed during the Data Breach is clear from Lakeview's disclosure to the California Attorney General. California law requires disclosure when "unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person[.]" Cal. Civ. Code § 1798.82(a)(1).

33.     To prevent and detect cyber-attacks and/or ransomware attacks Lakeview could and should have implemented, as recommended by the United States Government, the following measures:

- An awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scanning of all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Firewalls configured to block access to known malicious IP addresses.

- Patching of operating systems, software, and firmware on devices, including considering use of a centralized patch management system.

- Anti-virus and anti-malware programs set to conduct regular scans automatically.

- Management over the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Access control configurations—including file, directory, and network share permissions—with the principle of the least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email, including considering using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Disabling Remote Desktop protocol (RDP) if it is not being used.

- Application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Executing operating system environments or specific programs in a virtualized environment.

- Categorization of data based on organizational value and implement physical and logical separation of networks and data for different organizational units.

34.     To prevent and detect cyber-attacks Lakeview could and should have followed the recommendations of the United States Cybersecurity & Infrastructure Security Agency, which called for the following measures:

- **Update and patch your computer**. Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks….

- **Use caution with links and when entering website addresses**. Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net)….

- **Open email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- **Keep your personal information safe**. Check a website's security to ensure the information you submit is encrypted before you provide it….

- **Verify email senders**. If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself**. Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic….[6]

35.    To prevent and detect cyber-attacks or ransomware attacks Lakeview could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure internet-facing assets**
- Apply latest security updates
- Use threat and vulnerability management
- Perform regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**
- Prioritize and treat commodity malware infections as potential full compromise;

**Include IT Pros in security discussions**
- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**
- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords;

**Apply principle of least-privilege**
- Monitor for adversarial activities
- Hunt for brute force attempts
- Monitor for cleanup of Event Logs
- Analyze logon events;

**Harden infrastructure**
- Use Windows Defender Firewall
- Enable tamper protection
- Enable cloud-delivered protection

Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual

---

[6] *See* Security Tip (ST19-001) Protecting Against Ransomware (original release date Apr. 11, 2019), *available at:* https://us-cert.cisa.gov/ncas/tips/ST19-001 (last visited Nov. 11, 2021).

Basic for Applications].[7]

36.     Given that Lakeview was storing the PII of Plaintiffs and Class Members, Lakeview could and should have implemented all of the above measures to prevent and detect ransomware attacks. Lakeview's failure to encrypt this sensitive PII was negligent in and of itself.

37.     The occurrence of the Data Breach indicates that Lakeview failed to adequately implement one or more of the above measures to prevent ransomware attacks. The failure to implement some or all of the above measure resulted in the data breach and the exposure of Plaintiffs' and Class Members' PII.

***Lakeview Failed to Comply with FTC Guidelines and Industry Standards***

38.     The Data Breach could have been prevented by proper storage and encryption of Plaintiffs' and Class Members' PII. Lakeview could also have implemented procedures to destroy PII data that was no longer useful or outdated.

39.     Lakeview knew and understood unprotected or exposed PII in the custody of banking service companies, such as Lakeview, is valuable and highly sought after by nefarious third parties seeking to illegally monetize that PII through unauthorized access. Despite these public warnings, Lakeview failed to take appropriate steps or comply with guidelines set by the FTC and standard in its industry.

40.     The FTC's 2016 update to *Protecting Personal Information: A Guide for Businesses* provided guidelines for the protection of personal information. Namely, the FTC has noted that businesses should protect the personal information that they maintain, should properly dispose of personal information that is no longer necessary, encrypt information stored on

---

[7] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at:* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last visited May 31, 2022).

computer networks, understand vulnerabilities, and implement policies and procedures to correct security problems.[8] The FTC also recommends limiting access to sensitive data, requiring complex passwords for networks, using industry-tested methods to secure networks and files, monitoring for suspicious network activity, and verifying third-party service providers implement reasonable security measures. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect data of customers against unauthorized access, treating these failures as unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45.

41.     Lakeview was aware at all times of its obligation to protect Plaintiffs' and Class Members' PII and was aware of the significant repercussions that would result from failing to do so. Nonetheless, Lakeview failed to implement basic data security practices to prevent the unauthorized disclosure of Plaintiffs' and Class Members' PII. This failure constitutes an unfair act or practice under Section 5 of the FTC Act.

42.     A number of best practices have been identified that, at a minimum, companies like Lakeview are obligated to implement to protect sensitive data from unauthorized disclosure, including: education of employees; requiring strong passwords; implementing firewall, anti-virus, and anti-malware software; encryption; making data unreadable without a key; multi-factor authentication; creating backups; malware detection software; monitoring and limiting network ports; protecting web browsers and email systems; monitoring and protection of physical security systems; and limiting employees who may access sensitive data.

43.     Lakeview failed to take these common and industry-standard measures and, upon information and belief, failed to meet the minimum standards of cybersecurity frameworks

---

[8] Protecting Personal Information: A Guide for Business, Federal Trade Commission (Oct. 2016), *available at* https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last visited May 31, 2022).

including: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO- 2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

44.      Lakeview's failure to comply with FTC guidelines and industry standards opened the door to the Data Breach.

***Personally Identifiable Information is Valuable***

45.      FTC regulations define identity theft as "fraud committed or attempted using the identifying information of another person without authority."[9] Identifying information is "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[10]

46.      The prices of ill-gotten PII on the dark web demonstrate its value. Personal information can be sold for $40 to $100.[11] Bank details can fetch $50 to $100.[12] A credit or debit card number may sell for $5 to $110.[13] The trove of data from breaches as a whole may be sold,

---

[9] 17 C.F.R. § 248.201 (2013).
[10] *Id*.
[11] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, available at: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited May 31, 2022).
[12] *Id*.
[13] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited May 31, 2022).

in some cases from \$900 to \$4,500.[14]

47.     Social Security numbers are among the worst kind of PII to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[15]

48.     Compounding the issue, it is incredibly difficult to cancel or change a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. Preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

49.     Even if an individual is able to jump through all such hurdles, a new Social Security number may not be effective. Credit bureaus may be able to link the new number to the old, making the impact of fraudulent activity related to the old number nearly impossible to escape.[16]

50.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data

---

[14] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited May 31, 2022).

[15] Social Security Administration, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited Jan. 19, 2022).

[16] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), *available at*: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft (last visited May 31, 2022).

breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—Social Security number, driver's license number, name, and date of birth.

51.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[17]

52.     Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

53.     The fraudulent activity resulting from the Data breach may not fully come to light for years given there may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[18]

54.     At all relevant times, Lakeview knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiffs and Class Members, including Social Security numbers and dates of birth, and of the foreseeable consequences that would occur if Lakeview's

---

[17] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited Nov. 11, 2021).

[18] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* https://www.gao.gov/assets/gao-07-737.pdf (last visited May 31, 2022).

data security system and network was breached, including, specifically, the significant costs that would be imposed on Plaintiffs and Class Members as a result of a breach.

55.     Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Classes are incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

56.     Lakeview was, or should have been, fully aware of the unique type and the significant volume of data on Lakeview's server(s) and thus the significant number of individuals who would be harmed by the exposure of unencrypted data.

57.     According to the FTC, identity theft wreaks havoc on consumers' finances, credit history, reputation, and can take time, money, and patience to resolve.[19]  Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank and finance fraud.[20]

58.     The physical, emotional, and social toll suffered (in addition to the financial toll) by identity theft victims cannot be understated.[21]

A 2016 Identity Theft Resource Center survey of identity theft victims sheds light on the prevalence of this emotional suffering caused by identity theft: 74 percent of respondents reported feeling stressed[,] 69 percent reported feelings of fear related to personal financial safety[,] 60 percent reported anxiety[,] 42 percent reported fearing for the financial security of family members[, and] 8 percent reported feeling suicidal.[22]

59.     Because the information Lakeview allowed to be compromised and taken is of such a durable and permanent quality (*i.e.*, name, address, lien number, and Social Security number),

---

[19] *See Taking Charge, What to Do If Your Identity is Stolen*, FTC, 3 (Apr. 2013), https://www.justice.gov/usao-wdmi/file/764151/download (last visited May 31, 2022).
[20] *See id.*
[21] Alison Grace Johansen, *4 Lasting Effects of Identity Theft*, NortonLifeLock (Mar. 13, 2018), https://www.lifelock.com/learn-identity-theft-resources-lasting-effects-of-identity-theft.html.
[22] *Id.* (citing *Identity Theft: The Aftermath 2016™*, Identity Theft Resource Center (2016) https://www.idtheftcenter.org/images/page-docs/AftermathFinal_2016.pdf).

the harms to Plaintiffs and the Class Members will continue and increase, and Plaintiffs and Class Members will continue to be at substantial risk for further imminent and future harm.

60.     This harm was directly and proximately caused by Lakeview's failure to implement and/or maintain adequate and reasonable data security measures to protect the PII of Plaintiff and Class Members.

***Lakeview's Post-Breach Activity Was (and Remains) Inadequate***

61.     Lakeview did not notify Plaintiffs and Class Members until March or April 2022, or more than four months from the discovery of the Data Breach. Immediate notice of a security breach is essential to protect victims such as Plaintiffs and Class Members. By failing to timely and/or efficiently inform Plaintiffs and Class Members, Lakeview exacerbated the harm that Plaintiffs and Class Members suffered as a result of the Data Breach

62.     Plaintiffs and Class Members have suffered real and tangible losses, including but not limited to, the loss in the inherent value of their PII, the loss of their time as they have had to spend additional time monitoring accounts and activity, and additional economic loss to mitigate the costs of injuries realized as a result of discovery in this case.

63.     Despite Lakeview's failure to protect Plaintiffs' and Class Members' PII and the resulting harm, Lakeview has only offered to provide Plaintiffs and Class Members with one year of credit monitoring from a vendor of Lakeview's choosing.

64.     As a result of the Lakeview's failure to prevent the Data Breach, Plaintiffs and Class Members have suffered, will suffer, or are at increased risk of suffering:

    a.   The compromise, publication, theft and/or unauthorized use of their PII;

    b.   Unauthorized use and misuse of their PII;

    c.   The loss of the opportunity to control how their PII are used;

d.  Out-of-pocket costs associated with the prevention, detection, recovery and remediation from identity theft or fraud;

e.  Lost opportunity costs and lost wages and time associated with efforts expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft and fraud;

f.  The imminent and certain impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals;

g.  The continued risk to their PII that is subject to further breaches so long as Lakeview fails to undertake appropriate measures to protect the PII in Lakeview's possession; and

h.  Current and future costs in terms of time, effort and money that will be expended to prevent, detect, contest, remediate and repair the impact of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

65.     In addition to a remedy for the economic harm, Plaintiffs and the Class Members maintain a concrete and continuing interest in ensuring that their PII that remains in the possession of Lakeview is secure, remains secure, and is not subject to further theft.

*Plaintiffs' Experiences*

66.     Plaintiffs were required to provide and did provide their PII in connection with obtaining the mortgage serviced by Lakeview. The PII included, but was not limited to the Plaintiffs' names, addresses, Social Security numbers, and tax information. Lakeview obtained and retained this PII.

67.     Each of the Plaintiffs received a letter from Lakeview stating that their PII was included in the files accessed during the Data Breach. Despite the fact that Lakeview identified the unauthorized access in early December 2021, and had generated a list that include Plaintiffs on January 31, 2022, Lakeview did not send the letters to Plaintiffs until March or April 2022.

68.     Plaintiffs take measures to protect their PII and are careful about sharing their PII.

For example, Plaintiffs Teresa Oglesby and Anthony Oglesby store any documents containing their PII in a safe and secure location. Plaintiffs diligently choose unique usernames and passwords for their online accounts.

69.     Bad actors have recently begun attempting to access and accessing Plaintiffs Teresa Oglesby and Anthony Oglesby's accounts. Bad actors continue to access these accounts and have attempted to open fraudulent accounts using their PII. These Plaintiffs have spent and continue to spend a considerable amount of time mitigating the effects of the Data Breach including by placing credit holds with the three major credit reporting agencies. They need to open new accounts, and plan to take further steps to protect their PII through the major credit bureaus.

70.     All of the Plaintiffs have suffered actual injury from the compromise of their PII through the Data Breach including: (a) damage to and diminution in value of their PII, (b) violation of their privacy rights, (c) present, imminent, and impending injury arising from the increased risk of identity fraud.

71.     As a result of the Data Breach, all of the Plaintiffs anticipate spending considerable time and money on an ongoing basis to attempt to mitigate and address the harm caused by the Data Breach. They have already spent time investigating the Data Breach and its impact on them; time which could have been spent working or recreating. The present, imminent risk of identity theft will continue for years to come.

72.     All of the Plaintiffs have suffered emotional distress as a result of the Data Breach that allowed unauthorized access to their PII which they believed would be protected. This includes anxiety about unauthorized parties viewing, selling, or using their PII for purposes of identity theft and fraud.

73.     All of the Plaintiffs have a continuing interest in ensuring that their PII—which,

upon information and belief remains in Lakeview's possession—is reasonably protected and safeguarded from future breaches.

74.     To date, Lakeview failed to either adequately protect Plaintiffs and Class Members or to compensate them for their injuries sustained in this Data Breach. The offer of identity monitoring services—from the vendor of Lakeview's choice—for twelve months is wholly insufficient to cover the current and future harm. Indeed, Lakeview's Notice of Data Breach Letter advises Plaintiffs and Class Members to remain vigilant for the next "12 to 24 months."

## CLASS ALLEGATIONS

75.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this suit on behalf of themselves and the following classes:

**The South Carolina Class:**
All residents of South Carolina that Lakeview Loan Servicing, LLC identified as being among those individuals impacted by the Data Breach, including all who were sent a notice of the Data Breach.

**The Arkansas Class:**
All residents of Arkansas that Lakeview Loan Servicing, LLC identified as being among those individuals impacted by the Data Breach, including all who were sent a notice of the Data Breach.

**The Illinois Class:**
All residents of Illinois that Lakeview Loan Servicing, LLC identified as being among those individuals impacted by the Data Breach, including all who were sent a notice of the Data Breach.

76.      The three proposed classes are collectively referred to as the "Classes."

77.     Excluded from the Classes are Lakeview; officers, directors, and employees of Lakeview; any entity in which Lakeview has a controlling interest, is a parent or subsidiary, or which is controlled by Lakeview; and the affiliates, legal representatives, attorneys, heirs, predecessors, successors, and assigns of Lakeview. Also excluded are the Judges and Court

personnel in this case and any members of their immediate families.

78.     Plaintiffs reserve the right to modify the definitions of the Classes in order to maintain cohesive, including the right to create additional subclasses, if necessary.

79.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of the claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

80.     All Class Members are readily ascertainable in that Lakeview has access to addresses and other contact information for all Class Members, which can be used for providing notice to Class Members. Notice may also be provided through publication, self-identification, and other means.

*Numerosity*

81.     The number of members of each Class is so numerous that joinder of all members is impracticable. While the exact number of class members is unknown at this time, more than 2.5 million individuals nationwide were impacted and, upon information and belief, the number of members of each Class exceeds 2,000.

*Commonality*

82.     There are numerous questions of law and fact common to the Classes, which predominate over any questions affecting only individual members of the Classes. These common questions include, without limitation:

    a.   whether Lakeview engaged in the wrongful conduct alleged in this Complaint;

    b.   whether Lakeview's conduct was unfair, unconscionable, and/or unlawful;

    c.   whether Lakeview failed to implement and maintain adequate and reasonable systems and security procedures and practices to protect Plaintiffs' and Class Members' PII;

d.  whether Lakeview owed a duty to Plaintiffs and Class Members to adequately protect their PII and to provide timely and accurate notice of the Data Breach to Plaintiffs and Class Members;

e.  whether Lakeview breached its duties to protect the PII of Plaintiffs and Class Members by failing to provide adequate data security and failing to provide appropriate and adequate notice of the Data Breach to Plaintiffs and Class Members;

f.  whether Lakeview's conduct was negligent;

g.  whether Lakeview knew or should have known that its computer systems were vulnerable to being compromised;

h.  whether Lakeview's conduct, including its failure to act, resulted in or was the proximate cause of the Data Breach of its systems, resulting in the loss of Plaintiffs' and Class Members' PII;

i.  whether Lakeview wrongfully or unlawfully failed to inform Plaintiffs and Class Members that they did not maintain data security practices adequate to reasonably safeguard Plaintiffs' and Class Members' PII;

j.  whether and when Lakeview actually learned of the Data Breach;

k.  whether Lakeview adequately, promptly, and accurately informed Plaintiffs and the Class Members that their PII had been compromised;

l.  whether Lakeview addressed or remediated the vulnerabilities that allowed the Data Breach to occur

m.  whether Plaintiffs and Class Members suffered injury, including ascertainable losses, as a result of Lakeview's conduct (or failure to act);

n.  whether Plaintiffs and Class Members are entitled to recover actual damages, nominal damages, and/or statutory damages; and

o.  whether Plaintiffs and Class Members are entitled to declaratory relief and equitable relief, including injunctive relief, restitution, disgorgement, and/or other equitable relief.

***Typicality***

83.  The claims of the named Plaintiffs are typical of those of the members of the Classes in that their PII, like that of each member of the Classes, was compromised in the Data

Breach.

*Adequacy*

84.     Plaintiffs and counsel will fairly and adequately protect the interests of the Class. Plaintiffs are members of the Classes they seek to represent; are committed to pursuing this matter against Lakeview to obtain relief for the Class; and have no interests that are antagonistic to, or in conflict with, the interests of other Class Members.  Plaintiffs retained counsel who are competent and experienced in litigating class actions and complex litigation, including privacy litigation of this kind.  Plaintiffs and their counsel intend to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

*Superiority*

85.     Class treatment is superior to other available methods for the fair and efficient adjudication of this controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation.  Moreover, absent a class action, most Class Members would find the cost of litigating their claims prohibitively high and would therefore have no effective remedy, so that in the absence of class treatment, Lakeview's violations of law inflicting substantial damages in the aggregate would go unremedied without certification of the Class.  Plaintiffs and Class Members have been harmed by Lakeview's wrongful conduct and/or action.  Litigating this action as a class action will reduce the possibility of repetitious litigation relating to Lakeview's conduct and/or inaction.  Plaintiffs know of no difficulties that would be encountered in this litigation that would preclude its maintenance as a class action.

86.     Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the common questions of law or fact predominate over any questions affecting individual Class Members, a class action is superior to other available methods for the fair and efficient adjudication

of this controversy, and the requirements of Rule 23(a) are met.

87.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1), in that the prosecution of separate actions by the individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Lakeview.  In contrast, the conduct of this action as a class action conserves judicial resources and the parties' resources and protects the rights of each Class Member.  Specifically, injunctive relief could be entered in multiple cases, but the ordered relief may vary, causing Lakeview to have to choose between differing means of upgrading their data security infrastructure and choosing the court order with which to comply.  Class action status is also warranted because prosecution of separate actions by Class Members would create the risk of adjudications with respect to individual Class Members that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

88.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Lakeview, through its uniform conduct, acted or failed and refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.  Moreover, Lakeview continues to maintain its inadequate security practices, retain possession of Plaintiffs' and Class Members' PII, and has not been forced to change its practices or to relinquish PII by nature of other civil suits or government enforcement actions, thus making injunctive relief a live issue and appropriate to the Class as a whole.

89.     Particular issues are also appropriate for certification under Fed. R. Civ. P. 23(c)(4) because the claims present particular, common issues, the resolution of which would materially advance the resolution of this matter and the parties' interests therein.  Such particular issues

include, but are not limited to:

      a.   whether Plaintiffs' and Class Members' PII were accessed, compromised, or stolen in the Data Breach;

      b.   whether Lakeview owed a legal duty to Plaintiffs and the Class Members;

      c.   whether Lakeview failed to take adequate and reasonable steps to safeguard the PII of Plaintiffs and Class Members;

      d.   whether Lakeview failed to adequately monitor its data security systems;

      e.   whether Lakeview failed to comply with applicable laws, regulations, and industry standards relating to data security;

      f.   whether Lakeview knew or should have known that they did not employ adequate and reasonable measures to keep Plaintiffs' and Class members' PII secure; and

      g.   whether Lakeview'x adherence to FTC data security obligations, industry standards, and measures recommended by data security experts would have reasonably prevented the Data Breach.;

## COUNT I
### Negligence
### (On Behalf of All Plaintiffs and the Classes)

90.    Plaintiffs re-allege and incorporate by reference all allegations contained in the foregoing paragraphs as if fully alleged herein.

91.    Plaintiffs Anthony Oglesby, Teresa Oglesby, Sonja McCaleb, and Brian Walter bring this claim on behalf of themselves and the South Carolina Class, the Arkansas Class, and the Illinois Class.

92.    Lakeview knowingly collected, came into possession of, and maintained Plaintiffs' and Class Members' PII, in order to perform mortgaging services. Lakeview used and benefited from the non-public PII of Plaintiffs and Class Members in the provision of servicing mortgages on Plaintiffs' and Class Members' properties.

93.    Plaintiffs and Class Members entrusted Lakeview with their PII and Lakeview was

fully cognizant of the value and importance of the PII and the types of harm that Plaintiffs and Class Members could and would suffer if the PII were wrongfully disclosed.

94.     By assuming Plaintiffs' and Class Members' PII, Lakeview had a duty under common law to exercise reasonable care in safeguarding, securing, and protecting Plaintiffs' and Class Members' PII from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. Lakeview owed a common law duty to prevent foreseeable harm to Plaintiffs and Class Members.  The duty existed because Plaintiffs and Class Members were the foreseeable and probable victims of any inadequate security practices of Lakeview in its collection, storage, and use of PII from Plaintiffs and Class Members. It was foreseeable that Plaintiffs and Class Members would be harmed by the failure to protect their PII because malicious actors routinely attempt to steal such information for use in nefarious purposes. The injury to Plaintiffs and Class Members, was reasonably foreseeable a particularly in light of Lakeview's inadequate security practices, including sharing and/or storing the PII of Plaintiff and Class Members on its computer systems.

95.     Lakeview had a duty under common law to have procedures in place to detect and the loss or unauthorized dissemination of Plaintiffs' and Class Members' PII in a reasonably expeditious amount of time and to give prompt notice to Plaintiffs and Class members.

96.     Lakeview had a duty to employ reasonable security measures to protect Plaintiffs' and Class Members' PII under Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits unfair practices in or affecting commerce. This duty has been interpreted and enforced by the FTC to cover the conduct at issue here.

97.     Lakeview had a duty, pursuant to the Gramm-Leach-Bliley Act, to protect the security and confidentiality of Plaintiff's and Class Members' PII. *See* 15 U.S.C. § 6801.

98.     Lakeview had a duty to comply with industry standards as set out herein.

99.     Lakeview was subject to an "independent duty," untethered to any contract between Lakeview and Plaintiff or Class Members.

100.    Lakeview's conduct created a foreseeable risk of harm to Plaintiffs and Class Members. Namely, Lakeview failed to take steps outlined herein to prevent the Data Breach.

101.    Plaintiffs and Class Members had no ability to protect their PII that was in, and possibly remains in, Lakeview's possession. Meanwhile, Lakeview was in a position to protect against the harm suffered by Plaintiffs and the Class Members.

102.    Lakeview had and continues to have a duty to adequately disclose that Plaintiffs' and Class Members' PII was compromised, how it was compromised, the precise data that was compromised, and when it was compromised. Such notice was necessary for Plaintiffs and Class Members to take steps to mitigate the harm caused by the Data breach and prevent and repair identity theft and fraud perpetrated by third parties with access to PII as a result of the Data Breach.

103.    Lakeview, through its actions and omissions, unlawfully breached its duties to Plaintiffs and Class Members by failing to exercise reasonable care in protecting and safeguarding the PII of Plaintiffs and Class Members in its possession.

104.    Lakeview, through its actions and omissions, unlawfully breached its duties to Plaintiffs and Class Members by failing to have in place appropriate procedures to detect and prevent dissemination of the PII of Plaintiffs and Class Members in its possession.

105.    Lakeview's breach of its duties directly and proximately caused Plaintiffs' and Class Members' PII to be compromised. And, by continually failing to timely notify Plaintiff and Class Members regarding the type of PII compromised, Plaintiff and Class Members are unable to take needed precautions to prevent future fraud and identity theft.

106.    Lakeview's breach of its duties directly and proximately caused Plaintiffs and Class Members the harms of identity theft, fraud, loss of time and money to monitor their finances for fraud, and loss of control over their PII. This has resulted and will continue to result in out-of-pocket costs and lost opportunity costs and wages.

107.    Lakeview's breach of its duties directly and proximately caused Plaintiffs and Class Members to be in danger of imminent harm in that their PII, still in the possession of third parties, will be used for fraudulent purposes.

108.    There is a temporal and close causal connection between Lakeview's failure to implement security measures to protect the PII of current and former borrowers and the harm suffered, or risk of imminent harm suffered, by Plaintiffs and Class Members.

109.    Plaintiffs and Class Members have suffered, and continue to suffer, damages arising from the Data Breach as described herein and are entitled to compensatory, and consequential damages in an amount to be proven at trial.

110.    Plaintiffs also seek injunctive relief on behalf of the class to compel Lakeview to institute appropriate data collection and safeguarding methods and policies with regard to customer information.

**COUNT II**
**Breach of Implied Contract**
**(On Behalf of All Plaintiffs and the Classes)**

111.    Plaintiffs re-allege and incorporate by reference all allegations contained in the foregoing paragraphs, aside from other counts, as if fully alleged herein.

112.    Plaintiffs Anthony Oglesby, Teresa Oglesby, Sonja McCaleb, and Brian Walter bring this claim on behalf of themselves and the South Carolina Class, the Arkansas Class, and the Illinois Class.

113.     Through their course of conduct, Plaintiff and Class Members entered into implied contracts with Lakeview to implement security measures adequate to safeguard from unauthorized third parties the PII of Plaintiffs and the Class Members that Lakeview had in its possession.

114.     Lakeview induced, solicited, and invited Plaintiffs and Class Members to provide their PII as a condition of obtaining Lakeview's services. This included name, address, and Social Security number. Plaintiffs and Class Members accepted Lakeview's offer.

115.     In order to be a Lakeview customer, Plaintiffs and Class Members entrusted Lakeview with their PII. In doing so, Lakeview agreed to safeguard such PII, keep it secure and confidential, and to timely and adequately notify Plaintiffs and Class Members of any breaches or compromising of that PII. A meeting of the minds as to these terms occurred.

116.     Plaintiffs and Class Members fully performed their obligations under the implied contracts with Lakeview.

117.     By failing to safeguard Plaintiffs' and Class Members' PII, and by failing to adequately and promptly inform Plaintiffs and Class Members of the Data Breach and that their PII was compromised, Lakeview breach the implied contracts.

118.     As a direct and proximate result of Lakeview's breach, Plaintiffs and Class Members have suffered, will suffer, or are at increased risk of suffering:

      a.      The compromise, publication, theft and/or unauthorized use of their PII;

      b.      Unauthorized use and misuse of their PII;

      c.      The loss of the opportunity to control how their PII are used;

      d.      Out-of-pocket costs associated with the prevention, detection, recovery and remediation from identity theft or fraud;

      e.      Lost opportunity costs and lost wages and time associated with efforts expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Breach, including

31

but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft and fraud;

f.   The imminent and impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals;

g.   The continued risk to their PII that is subject to further breaches so long as Lakeview fails to undertake appropriate measures to protect the PII in Lakeview's possession; and

h.   Current and future costs in terms of time, effort and money that will be expended to prevent, detect, contest, remediate and repair the impact of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

119.   Plaintiffs and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach and Lakeview's breach of the implied contracts, including the loss of the benefit of the bargain.

## COUNT III
## Unjust Enrichment
### (On Behalf of All Plaintiffs and the Classes)

120.   Plaintiffs re-allege and incorporate by reference all allegations contained in the foregoing paragraphs, aside from other counts, as if fully alleged herein.

121.   Plaintiffs Anthony Oglesby, Teresa Oglesby, Sonja McCaleb, and Brian Walter bring this claim on behalf of themselves and the South Carolina Class, the Arkansas Class, and the Illinois Class.

122.   This Count is pled in the alternative.

123.   Plaintiffs and Class Members conferred a monetary benefit to Lakeview when the provided their PII to Lakeview in order to receive services from Lakeview.

124.   Lakeview knowingly accepted and retained that benefit. It profited from this benefit as the provision of PII allowed Lakeview to perform its mortgage servicing business for which it receives compensation. The receipt of PII is an integral part of Lakeview's business.

125. Lakeview had an obligation to use some of the monetary benefit provided to it, directly or indirectly, by Plaintiffs and Class Members, to secure the PII of Plaintiffs and Class Members that it received and retained by paying for reasonable and adequate data security measures.

126. Lakeview's retention of the benefit bestowed upon it by Plaintiffs and Class Members would be unjust and unethical because it failed to implement reasonable and adequate data security measures to protect Plaintiffs' and Class Members' PII.

127. Lakeview's access to Plaintiffs' and Class Members' PII was further unjust because Lakeview did not disclose that its data security measures were inadequate.

128. Plaintiffs and Class Members were not aware of the inadequacy of Lakeview's data security measures would not have provided their PII had they known of their inadequacy.

129. Plaintiffs and Class Members have no adequate remedy at law.

130. Lakeview should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds from the monetary benefit that it unjustly received from them.

### COUNT IV
### Violation of the South Carolina Unfair Trade Practices Act
### S.C. Code § 39-5-10, *et seq.*
### (On Behalf of Plaintiffs Anthony Oglesby and Teresa Oglesby)

131. Plaintiffs re-allege and incorporate by reference all allegations contained in the foregoing paragraphs, aside from other counts, as if fully alleged herein.

132. Lakeview engaged in unfair and deceptive acts and practices in violation of the South Carolina Unfair Trade Practices Act, S.C. Code §§ 39-5-10, *et seq.*

133. Plaintiffs Anthony Oglesby and Teresa Oglesby bring this claim on behalf of themselves.

33

134.     Lakeview's unfair and deceptive acts and omissions as alleged herein constitute unfair methods of competition and unfair or deceptive acts or within the meaning of South Carolina law, common law, and S.C. Code §§ 39-5-20 and 37-1-201 *et seq*. Lakeview is a "person" as defined by the South Carolina Statutes.

135.     Plaintiffs are "consumer[s]" as defined by the South Carolina Statutes.

136.     Lakeview advertised, offered, and/or sold services in South Carolina and engaged in trade or commerce directly or indirectly affecting the people of the state of South Carolina, as defined by §§ 37-1-201 and 39-5-20 *et seq*., and other applicable statutes and law.

137.     Lakeview engaged in false, misleading, or deceptive acts and practices, in violation of §§ 37-1-201, 39-5-10, 39-5-20 *et seq*., and other applicable statutes and laws, including:

a.     Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not;

b.     Engaging in unfair or deceptive trade practices as defined by this statute by making false and misleading oral and written statements that had, and have, the capacity, tendency or effort of deceiving or misleading consumers;

c.     Engaging in unfair or deceptive trade practices as defined in this statute through deception, fraud, misrepresentation and knowing concealment, suppression and omission of material facts with the intent that consumers rely upon the same in connection with the use and continued use of the services provided by Lakeview, individually or in combination with;

d.     Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

e.     Advertising goods or services with intent not to sell them as advertised.

138.     Lakeview's false, misleading and deceptive acts and practices include:

a.     Failing to protect the PII in its possession;

b.      Failing to implement and maintain adequate, industry-standard computer systems and allowing unauthorized access to and exfiltration of Plaintiffs' Anthony Oglesby and Teresa Oglesby PII, which was a direct and proximate cause of the Data Breach;

c.      Failing to identify and remedy foreseeable security and privacy risks;

d.      Failing to disclose the material fact that Lakeview's computer systems and data security practices were inadequate to safeguard the PII in its possession from theft;

e.      Failing to disclose in a timely and accurate manner to Plaintiffs Anthony Oglesby and Teresa Oglesby the material fact of the Data Breach;

f.      Misrepresenting that they would protect the privacy and confidentiality of Plaintiffs' PII;

139.    Lakeview intended to mislead Plaintiffs Anthony Oglesby and Teresa Oglesby and induce them to rely on its misrepresentations and omissions.

140.    Lakeview's misrepresentations and omissions were material because they were likely to deceive reasonable consumers about the adequacy and security of Lakeview's data storage systems and Lakeview's ability to protect consumers' PII. Had Plaintiffs Anthony Oglesby and Teresa Oglesby known that their PII was in such a vulnerable position, they would not have provided it in these circumstances given the extremely serious consequences that would flow from the breach of Lakeview's vulnerable computer systems.

141.    Plaintiffs Anthony Oglesby and Teresa Oglesby acted reasonably in relying on Lakeview's misrepresentations and omissions and could not have discovered Lakeview's data systems were actually inadequate.

142.    Had Lakeview disclosed to Plaintiffs Anthony Oglesby and Teresa Oglesby that its data systems were not secure and therefore vulnerable to attack, Plaintiffs would not have

relinquished their private information and Lakeview would have been forced to adopt adequate data security practices to comply with the law and continue doing business.

143.    Lakeview owed a common law duty to prevent foreseeable harm to Plaintiffs. The duty existed because Plaintiffs provided their PII in exchange for Lakeview's services, and they were the foreseeable and probable victims of any inadequate security practices of Lakeview in its collection, storage, and use of PII from Plaintiffs. It was foreseeable that Plaintiffs would be harmed by the failure to protect their PII because malicious actors routinely attempt to steal such information for use in nefarious purposes.

144.    Lakeview violated applicable statutes, laws, and regulations by representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not; representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and advertising goods or services with intent not to sell them as advertised. Consumers relied on these misrepresentations and omissions to consumers' own detriment.

145.    Further, the FTC has interpreted and enforced the duty of Companies like Lakeview to protect and safeguard PII like that of Plaintiffs. It has enforced this duty and determined that it is an unfair practice to fail to take reasonable steps to safeguard such PII. Pursuant to S.C. Code § 39-5-20, such interpretations should guide the Court in construing the South Carolina Act and inform the contours of an unfair practice.

146.    Lakeview alone knew about the deficiencies of its data systems. Consumers, including Plaintiffs, lacked this knowledge because this information was known exclusively by

36

Lakeview, consumers lack expertise in information security. Even if they did have this expertise, consumers do not have access to Lakeview's data systems to ensure the security of their PII.

147.    As a direct and proximate result of Lakeview's conduct as alleged above, Plaintiffs have suffered, will suffer, or are at increased risk of suffering:

  a. The compromise, publication, theft and/or unauthorized use of their PII;

  b. Unauthorized use and misuse of their PII;

  c. The loss of the opportunity to control how their PII are used;

  d. Out-of-pocket costs associated with the prevention, detection, recovery and remediation from identity theft or fraud;

  e. Lost opportunity costs and lost wages and time associated with efforts expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft and fraud;

  f. The imminent and impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals;

  g. The continued risk to their PII that is subject to further breaches so long as Lakeview fails to undertake appropriate measures to protect the PII in Lakeview's possession; and

  h. Current and future costs in terms of time, effort and money that will be expended to prevent, detect, contest, remediate and repair the impact of the Data Breach for the remainder of the lives of Plaintiffs.

148.    Plaintiffs seek all monetary and non-monetary relief as the court deems just and proper.

### COUNT V
### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
### 815 ILCS 505/2
### (On Behalf of Plaintiff Brian Walter and the Illinois Class)

149.    Plaintiff re-alleges and incorporates by reference all allegations contained in the

foregoing paragraphs, aside from other counts, as if fully alleged herein.

150.    Plaintiff Brian Walter brings this claim on behalf of himself and the Illinois Class.

151.    The Illinois Consumer Fraud and Deceptive Business Practices Act prohibits the "omission of any material fact, with the intent that others rely upon the . . . omission . . . in the conduct of any trade or commerce . . . ." 815 ILCS 505/2.

152.    Lakeview's conduct in failing to disclose that its computer systems and data security practices were inadequate to safeguard the PII in its possession from theft as described above constitutes an unfair or deceptive act or practice. Specifically, Lakeview failed to disclose its failure to take reasonable and adequate steps to safeguard the PII that Plaintiffs and Class Members had entrusted to it and that the resultant vulnerabilities left the PII susceptible to unauthorized access by third parties.

153.    These omissions were material. Had Plaintiff and class members known that their sensitive PII was vulnerable, they would not have provided it in these circumstances given the extremely serious consequences that would flow from the breach of Lakeview's vulnerable computer systems.

154.    Lakeview intended that Plaintiff and Class Members rely on its omission in order to obtain the PII that they desired while deceiving Plaintiff and Class Members that their PII was safe, including by representing as much in their privacy policy. In reality, as described above, Lakeview did not implement adequate measures to secure the PII.

155.    Lakeview's conduct took place in the course of conduct involving a trade or commerce.

156.    Lakeview's material omission and conduct proximately caused damage to Plaintiff and the Class Members. They provided their PII that was compromised as a result of Lakeview's

inadequate security measures relating to PII it maintained. Lakeview's material omission and conduct also creates a likelihood of future damages for Plaintiffs and Class Members. Plaintiffs and Class Members have suffered, will suffer, or are at increased risk of suffering:

a.  The compromise, publication, theft and/or unauthorized use of their PII;

b.  Unauthorized use and misuse of their PII;

c.  The loss of the opportunity to control how their PII are used;

d.  Out-of-pocket costs associated with the prevention, detection, recovery and remediation from identity theft or fraud;

e.  Lost opportunity costs and lost wages and time associated with efforts expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft and fraud;

f.  The imminent and impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals;

g.  The continued risk to their PII that is subject to further breaches so long as Lakeview fails to undertake appropriate measures to protect the PII in Lakeview's possession; and

h.  Current and future costs in terms of time, effort and money that will be expended to prevent, detect, contest, remediate and repair the impact of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

157.   Further, the FTC has interpreted and enforced the duty of companies like Lakeview to protect and safeguard PII like that of Plaintiffs and the Class Members. It has enforced this duty and determined that it is an unfair practice to fail to take reasonable steps to safeguard such PII. Pursuant to 815 ILCS 505/2, such interpretations should guide the Court in construing the Illinois Act and inform the contours of an unfair practice.

158.   Plaintiff seeks on behalf of the Illinois Class all monetary and non-monetary relief as the court deems just and proper.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiffs, individually and on behalf of the proposed Class, respectfully request the following relief:

a. An order certifying this case as a class action on behalf of the Class, defined above, appointing Plaintiffs as Class representative and appointing the undersigned counsel as Class counsel;

b. A mandatory injunction directing Lakeview to adequately safeguard Plaintiffs' and the Class's PII by implementing improved security procedures and measures as outlined above;

c. An award of other declaratory, injunctive, and equitable relief as is necessary to protect the interests of Plaintiffs and Class Members;

d. An award of restitution and compensatory, consequential, and general damages to Plaintiffs and Class Members, including nominal damages as allowed by law in an amount to be determined at trial or by this Court;

e. An award of actual or statutory damages to Plaintiffs and Class Members in an amount to be determined at trial or by this Court;

f. An award of reasonable litigation expenses and costs and attorneys' fees to the extent allowed by law;

g. An award to Plaintiffs and Class Members of pre- and post-judgment interest, to the extent allowable; and

h. Award of such other and further relief as equity and justice may require.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.

Dated: June 2, 2022

Respectfully Submitted,
HODGE & LANGLEY LAW FIRM, PC

*s/ T. Ryan Langley*

T. Ryan Langley
Fed. ID 10047
Matthew T. Foss
Fed. ID 13271
229 Magnolia Street
PO Box 2765
Spartanburg, SC 29304
(864) 585-3873
Rlangley@HodgeLawFirm.com
MFoss@HodgeLawFirm.com
*Attorneys for Plaintiffs and the Putative Class*